UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

and

KIMENY BILLINGTON, ELLEN GLASS,        CIVIL ACTION NO.
and KAREN STEWART,        4:04CV391-SPM

        Plaintiff-Intervenors,

v.

ASSOCIATED SECURITY ENFORCEMENT, INC.
and ROBERT FANNIN,

        Defendants.
_____/

## PLAINTIFF EEOC'S TRIAL BRIEF

This is an action filed by the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII") and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a. The action was filed against Defendant Associated Security Enforcement, Inc. ("Associated" or "ASE") in order to correct unlawful employment practices on the bases of sex, retaliation, and to provide appropriate relief to Kimeny Billington, Ellen Glass, and other similarly situated individuals who were adversely affected

by ASE's unlawful practices. Specifically, Defendant violated Section 703(a)(1) of Title VII by subjecting Kimeny Billington ("Billington"), Ellen Glass ("Glass"), Karen Stewart ("Stewart") and Lydia Hall ("Hall") (hereinafter collectively referred to as "the claimants") to unwelcome sexual harassment which was sufficiently severe and pervasive to affect the terms and conditions of their employment and create a hostile and abusive work environment. Moreover, Defendant violated Section 704(a) of Title VII by retaliating against Claimant Glass. Specifically, Defendants demoted and ultimately terminated Claimant Glass for rejecting ASE's Owner, Co-Defendant Robert Fannin's ("Fannin") sexual advances and/or for complaining of the sexual harassment and/or for filing a charge of discrimination against Associated.

Three (3) of the women, Plaintiffs Billington, Glass and Stewart, intervened in the action, bringing claims for sex discrimination and retaliation against Defendant ASE and Co-Defendant Robert Fannin under Title VII and the Florida Civil Rights Act of 1992, Section 760.01-11, Florida Statutes ("FCRA"), together with a claim for inducement to prostitution under § 769.09, Florida Statutes and a common law claim of negligent retention and supervision. Plaintiff Stewart also brings a claim against Defendants for constructive discharge, along with a common law claim of battery.

I.   **FACTUAL BACKGROUND**

Defendant ASE is a security corporation that provides security guards for residential and commercial properties. The claimants worked for Defendant ASE at various times from May 2002 through July 2003. As the owner and chief executive officer of ASE, Co-Defendant Robert Fannin is responsible for all the personnel decisions and day-to-day operation of ASE, including, hiring, termination, promotion and discipline of employees.

Ellen Glass began her employment with Defendants on or about August 13, 2002, as a Roving Patrol Supervisor.  She was unlawfully subjected to discipline by demotion to a regular post position on or about December 2002, and was terminated on June 10, 2003, in retaliation for rejecting the sexually offensive conduct of Co-Defendant Robert Fannin, ASE's Owner, and for filing a charge of discrimination against ASE on April 23, 2003.

Kimeny Billington also worked for Defendants as a security guard from approximately July 1, 2002, and remained in that position until her separation from Defendants, on or about April 15, 2003. Karen Stewart worked as ASE's Human Resources Officer from approximately May 5, 2003 until she was forced to resign on or about July 8, 2003 because Owner Fannin's inappropriate sexually offensive conduct created a material change in the terms and conditions of Claimant Stewart's employment which rendered her working conditions intolerable.  Lydia Hall worked as a receptionist for Defendants from approximately May 16, 2002 to August 9, 2002.

Kimeny Billington, Ellen Glass, Karen Stewart and Lydia Hall (collectively "the claimants") were continuously subjected to verbal harassment of a sexual nature by Owner Fannin.  From the commencement of their respective employment, Owner Fannin made sexually offensive comments to the claimants on a daily basis which continued throughout their tenure with Defendants.  Owner Fannin's sexual harassment included, but was not limited to: (1) requests for sex in exchange for money; (2) comments about how his wife didn't like having sex with him, and his need to find sex elsewhere; (3) whether the claimants were aware of other women who would have sex with him; (4) numerous invitations to his home for sex; (5) comments about his strong sex drive and his need to do something about it; (6) continuously discussing the multiple affairs he had with other women; and (7)

3

requests to model their bodies.  Furthermore, Owner Fannin often commented that single mothers could earn extra money by having sex with him, and that it was a "win-win" situation for everyone involved.

The claimants repeatedly rejected Owner Fannin's sexually offensive conduct. Notwithstanding, their expressed objections, Owner Fannin persisted in engaging in sexually offensive conduct.  In addition, Fannin retaliated against Claimant Glass because she rejected his sexual advances and filed a charge of discrimination against him on April 21, 2003.[1]  Specifically, Defendants demoted Claimant Glass from Roving Supervisor to a post position in December of 2002, and ultimately fired her on or about June 10, 2003.

On May 5, 2003, approximately two weeks after Claimant Glass filed her charge of discrimination, Defendants hired Karen Stewart as Human Resources Officer.  Owner Fannin instructed Claimant Stewart to manufacture and pre-date months of "unfavorable" performance related documents for Claimant Glass that were clearly not in existence at the time of his request.  Claimant Stewart informed Owner Fannin that she thought it was completely inappropriate to draft "new" reprimands, but she followed his orders because she feared losing her job if she refused.  Thereafter Owner Fannin terminated Claimant Glass.

Soon after Glass was fired, Owner Fannin started to act inappropriately with Claimant Stewart. Specifically, Owner Fannin told Claimant Stewart that she needed to wear more skirts, instead of her usual business pants suits, so he could see her legs.  In addition, Fannin approached Claimant Stewart

---

[1]Kimeny Billington also filed a charge of discrimination with the Florida Commission on Human Rights on April 21, 2003, the same day as Claimant Glass.

and said, "I can change your job duties so you can drive me around at night to check the sites, then we can have a few drinks, get a little, and I'll pay you extra money." Fannin also told Claimant Stewart he had been married for almost twenty-eight years and didn't want a divorce, but wanted a little action on the side. He then said that there was nothing wrong with a woman having sex with a man for money in order to feed her family. He continued to tell Stewart that as a single mother, he was sure she needed extra money. In addition, Fannin offered to rent her some property right next door to his house and that he would give her a really good deal if she made "arrangements" with him.

On July 8, 2003, as Claimant Stewart was walking out of her office, Fannin had his hands out in front of him and grabbed her breasts. Initially, he said "excuse me" and started to walk away, but then he turned around and said "damn, that felt good, let's do it again" and touched her breasts again. After Fannin grabbed her breasts that day, Claimant Stewart left and did not return.

## II. DEFENDANTS SUBJECTED CLAIMANTS KIMENY BILLINGTON, ELLEN GLASS, KAREN STEWART, AND LYDIA HALL TO UNWELCOME SEXUAL HARASSMENT WHICH CREATED A HOSTILE WORK ENVIRONMENT

In Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986), the Supreme Court held that the language of Title VII supports a claim for hostile environment discrimination even in the absence of "'economic' or 'tangible' discrimination." 477 U.S. at 64. In reaching this result, the Court endorsed the EEOC's position that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." Id. at 65. To establish a claim of hostile environment discrimination must show: (1) the claimant is a member of a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment was sufficiently severe or pervasive to affect a term or condition of employment; and (5)

5

a basis for holding the employer liable.  <u>Sparks v. Pilot Freight Carriers, Inc.</u>, 830 F.2d 1554, 1557 (11th Cir. 1987), citing <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57 (1986); <u>Henson v. Dundee</u>, 682 F.2d 897, 902 (11th Cir. 1982).

**A.    The Claimants are Members of a Protected Group and were Subjected to Unwelcome Sexual Harassment**

_____The Claimants are all women and members of a group covered by Title VII.  Therefore, EEOC can clearly establish the first element necessary to substantiate a sexually hostile work environment.

To establish that the alleged harassment was unwelcome, plaintiff must demonstrate that she neither invited nor otherwise elicited the offensive conduct.  <u>Henson</u>, 682 F.2d at 903.  The Plaintiffs will show hat the conduct at issue was unwelcome by  all of the Claimants.  Specifically each of the claimants rejected Owner Fannin's sexually offensive propositions and further advised him that they wanted him to stop.  For instance, this conduct included but was not limited to, the claimants telling Fannin to stop commenting on their dress, his personal relationship with his wife, his desire to fulfill his own sexual needs, his requests for sex in exchange for money, and would oftentimes attempt to change the topic of conversation and/or walk away in an attempt to avoid Fannin's inappropriate conduct.

**B.    The Conduct Alleged Is Severe and Pervasive and Unreasonably Interfered with the Claimants' Work Performance**

The Supreme Court in <u>Harris</u> set forth the factors to be weighed in determining whether a hostile work environment exists.

Whether an environment is 'hostile' or abusive can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct;  its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether

it unreasonably interferes with an employee's work performance.  <u>Harris v. Forklift Systems, Inc.</u>, 114 S. Ct. 367, 371 (1993).

The Eleventh Circuit has explicitly recognized that the question of severity and persistency is to be determined by the "totality of the circumstances." <u>Henson v. City of Dundee</u>, 682 F.2d 897, 904.  The <u>Henson</u> court cited to the language of C.F.R. § 1604.11(b), which states that "the record as a whole" and the totality of the circumstances should be looked at in determining whether alleged conduct constitutes sexual harassment.  A single, unusually severe incident of harassment may be sufficient to constitute a Title VII violation; the more severe the harassment, the less need to show a repetitive series of incidents.  The Eleventh Circuit has further elaborated, "It is thus incorrect to apply mechanically an absolute numerical standard to the number of acts of harassment which must be committed by the defendant before a jury may reasonably find that a hostile environment exists." <u>Vance v. Southern Bell</u>, 863 F.2d 1503, 1511 (11th Cir. 1989).

Plaintiffs will present evidence at trial that shows that the claimants work environment was embedded with  frequent, severe, and humiliating instances of sexually offensive conducted that was created by Defendants' highest management authority, ASE's Owner and Chief Executive Officer, Co-Defendant Robert Fannin. Owner Robert Fannin repeatedly subjected the claimants to unwelcome sexual comments,  including, but not limited to: (1) requests for sex in exchange for money; (2) comments about how his wife didn't like having sex with him, and his need to find sex elsewhere; (3) whether the claimants were aware of other women who would have sex with him; (4) numerous invitations to his home for sex; (5) comments about his strong sex drive and his need to do something about it; (6) continuously discussing the multiple affairs he had with other women; and (7) requests to

model their bodies.  Owner Fannin often commented that single mothers could earn extra money by

having sex with him, and that it was a "win-win" situation for everyone involved.  Moreover, as a direct

result, Owner Fannin's unchecked harassment continued and escalated to the point that he became

physically aggressive when Claimant Stewart rejected his sexual advances.  Specifically, Fannin grabbed

Claimant Stewart's breasts twice, causing her to feel so violated and scared that she was forced to

leave her job.  These circumstances clearly meet the severe and pervasive standard set by the Court in

Harris.  See also,  Sullivan v. Lake Region Yacht and Country Club, Inc., 996 F. Supp. 1463, 1466

(M.D. Fla. 1998) (the court found a hostile environment based upon, *inter alia,* instances wherein a

male supervisor remarked that a female employee had "tight buns", asked her out on dates, touched

her buttocks and tried to get her to look at his groin area "to see how excited he was.")

In the present case, the working conditions for the claimants were undoubtedly altered by the

pervasive and severe sexual comments, propositions, and touching perpetrated by Owner Fannin.  In

Harris, the lower court, which was overturned, held that the harassing conduct at issue did not create

an abusive environment.  Harris, 114 S. Ct. at 370.  The Supreme Court in Harris rejected the lower

court's restrictive interpretation of the extent of applicability of Title VII.

> Title VII comes into play before the harassing conduct leads to a nervous breakdown.
> A discriminatorily abusive work environment, even one that does not seriously affect
> employees' psychological well-being, can and often will detract from employees job
> performance, discourage employees from remaining on the job, or keep them from
> advancing in their careers.  Moreover, even without regard to these tangible effects, the
> very fact that the discriminatory conduct was so severe or pervasive that it created a
> work environment abusive to employees because of their race, gender, religion, or
> national origin offends Title VII's broad rule of workplace equality.

Id. at 371.  Moreover the Eleventh Circuit has held that showing of tangible job detriment is not

necessary to proving a claim of hostile environment.

> A pattern of sexual harassment inflicted upon an employee because of her sex is a pattern of behavior that inflicts disparate treatment upon a member of one sex with respect to terms, conditions, or privileges of employment. There is no requirement that an employee subjected to such disparate treatment prove in addition that she has suffered tangible job detriment.

Henson, 682 F.2d at 902.

Nevertheless, in this case, Owner Fannin's conduct altered the claimants condition of employment. Specifically, it made them very uncomfortable to be alone with him. The claimants were in constant vigilance of Fannin attempting to invade their personal working space, so he could be in close proximity to conduct his sexually inappropriate behavior.

**C.     Defendants Are Liable for the Unlawful Sexual Harassment**

The sexual harasser in this case is Defendant ASE's Owner and Chief Executive Officer, Co-Defendant Robert Fannin. Plaintiffs will present evidence that substantiates that Owner Fanin was not only a supervisor with immediate or successively higher authority over the Claimants and other rank-and-file employees but he was also the highest supervisory authority in the company. As such, the appropriate standard of liability for the unlawful harassment in this case is the standard set forth by the Supreme Court in Burlington Industries v. Ellerth, 118 S.Ct. 2257 (1998) and reaffirmed in Faragher v. City of Boca Raton, 118 S.Ct. 2275 (1998) which specifically held that whenever a high ranking official engages in hostile environment sexual harassment, the employer is directly liable and does not have recourse to the affirmative defense. See also Faragher at 2284 (citing Burlington Industries v. Ellerth, 118 S.Ct. 2257, 2264(1998);  Harris v. Forklift Systems, 510 U.S. 17, 19 (1993); Burns v. McGregor Electronic Industries, Inc., 955 F.2d 559, 564 (C.A. 8 1992); Torres v. Pisano, 116 F.3d

625, 634-635 and n.11 (C.A. 2), cert. denied, 522 U.S. 997, 139 L.Ed. 2d 404, 118 S.Ct. 563 (1997); and Katz v. Kole, 709 F.2d 251, 255 (C.A. 4 1983)). See also, EEOC v. Robert L. Reeves and Associates, P.A., 2003 U.S. Dist. LEXIS 24701 (2003); Ackel v. National Communications, Inc., 339 F.3d 376, 383 (5th Cir. 2003)(citing Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 516 (9th Cir. 2000)); Mallinson-Montague v. Pocrnick, 224 F.3d 1224 (10th Cir. 2000); Randall v. Tod-Nik Audiology, Inc., 270 A.D.2d 38, 39, 704 N.Y.S.2d 228, 229 (S.Ct., App. Div. 1st. 2000). As such, Defendants are directly liable for the hostile environment created by Owner Fannin, ASE's Owner and Chief Executive Officer.and no affirmative defense is available.

## III.   RETALIATION

In the Eleventh Circuit a prima facie case of retaliation can be established if there was (1) a statutorily protected activity, (2) an adverse employment action, and (3) a causal link between the protected actions and the adverse employment decision. Weaver v. Casa Gallardo, Inc., 922 F.2d 1515 (11th Cir. 1991); Bigge v. Albertson's Inc., 894 F.2d 1497, 1501 (11th Cir. 1990); Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-601 (11th Cir. 1986); Simmons v. Camden County Board of Ed., 757 F.2d 1187 (11th Cir. 1985); and Doyal v. Marsh, 777 F.2d 1526 (11th Cir. 1985).

Statutorily protected activity, within the meaning of Title VII's retaliation provision, includes protecting individuals who participates in protected activity by filing a formal complaints with the EEOC as well as protecting individuals who opposes unlawful employment practices by informally voicing their complaints to their superiors or who use their employer's internal complaint procedure. See Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998); See also Balletti v. Sun-Sentinel Co., 909 F. Supp. 1539, 1549 (S.D. Fla. 1995) (holding that the plaintiff's complaint of sexual

harassment to Sun-Sentinel Management constitutes protected activity within the meaning of Title VII.). <u>ucation</u>, 757 F.2d 1187 (11th Cir. 1985); and <u>Doyal v. Marsh</u>, 777 F.2d .  To satisfy the opposition element of a retaliation claim, the relevant question is not whether a formal accusation of discrimination was made, but whether the employee's communications to the employer sufficiently conveyed the employee's concerns that the employer has acted or is acting in an unlawful discriminatory manner.  <u>Sowers v. Kemira, Inc.</u>, 701 F. Supp. 809, 825 (S.D. Ga. 1988); <u>Little v. United Technologies</u>, 103 F.3d 956, 960 (11th Cir. 1997), *citing*, <u>Rollins v. State of Fla. Dept. of Law Enforcement</u>, 868 F.2d 397, 400 (11th Cir. 1989).  The meaning extends to those1526 (11th Cir. 1985).

Plaintiff in this case can readily establish that Claimant Glass participated in statutorily protected activities as well as opposed what she reasonable believed to be unlawful employment practices.  The plaintiffs will present evidence that shows Claimant Glass complained to Defendant's management about sexual harassment on the part of Chief Executive Officer Fannin and later, filed a formal EEOC Charge regarding that harassment while still employed with the Defendants.  Further, Ellen Glass engaged in statutorily protected activity by voicing her opposition, not only to the sexual harassment by Owner Fannin, but also to Defendants' unlawful failure to take appropriate corrective action, as well as the unlawful retaliatory measures taken by Defendants against Claimant Glass.

Plaintiffs will also present evidence that will clearly establish the second element of its retaliation claims - that Claimant Glass suffered adverse employment actions.  Eleventh Circuit precedent establishes that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions such as discharge.  See <u>Wideman v. Wal-Mart Stores, Inc</u>, 141 F.3d 1453, 1455 (11th Cir. 1998) (holding that a one day suspension and two

11

written reprimands beginning the day after the plaintiff informed management that she had filed an

EEOC complaint, *inter alia*, constituted adverse employment action within the meaning of Title VII.);

See, also, Wyatt v. City of Boston, 35 F.3d 13, 15-16 (1st Cir. 1994) (stating  that actions other than

discharge are covered by Title VII's anti-retaliation provision and listing as examples "....refusals to

promote, unwarranted negative job evaluations and toleration of harassment by other employees.").

The Defendants took active steps to aggressively retaliate against Claimant Glass for exercising her

rights under Title VII by first demoting her from Roving Supervisor to a post position, and second, by

terminating her six (6) days after she voiced her objections to ASE's Co-Owner Brunhilda Fannin

about her husband, Owner Fannin's unlawful conduct.

       The test for the third element, causal link, is whether or not the protected activity and the

adverse employment decision are wholly unrelated.  Simmons, 757 F.2d at 1189; and Bigge, 894 F.2d

at 1501.   Eleventh Circuit case law establishes that timing or knowledge by the firing official is

sufficient to establish a causal link.  Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.

1993).  The shorter the period between the two events, the stronger the inference that the adverse

action was improperly motivated.  See Balletti, 909 F. Supp. at 1549 (S.D. Fla. 1995); See also

Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986) (stating that "the short period of time

[(one month)] between the filing of the discrimination complaint and the plaintiff's discharge belies any

assertion by the defendant that the plaintiff failed to prove causation."); and Troge v. J.C. Penny Co.,

Inc., 43 F. Supp. 2d 1343, 1347 (M.D. Fla. 1999) (stating that evidence an employer knows of an

employee's protected activity, combined with a proximity in time between the protected action and the

allegedly retaliatory action, is sufficient to establish a *prima facie* case of retaliation.).  A plaintiff need

only show retaliation was a motivating factor in an employer's decision to take adverse action in order to be eligible for injunctive relief in the public interest. 42 U.S.C.§ 2000e-2(m).

Not only did Defendant obviously  know of the statutorily protected activities of Claimant Glass,  there was a very close proximity in time between the time Claimant Glass engaged in these activities and the time she was subjected to adverse employment actions.  Defendants fired Ellen Glass six(6) days after the meeting in which Claimant Glass voiced her objection to the sexual harassment and Owner Fannin's conduct with respect to Claimant Glass' complaint.  Additionally, immediately after the meeting concerning Claimant Glass' sexual harassment complaint, Claimant Glass complained again directly to Co-Owner Brunhilda Fannin.  Shortly thereafter, Miss Glass was fired.

After the *prima facie* case is proven by plaintiff, the defendant bears the burden of rebutting the presumption of retaliation by producing legitimate reasons for the adverse employment action. Hairston v. Gainesville Sun. Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993).  At the time of Claimant Glass' discharge Defendant stated that her termination was due to complaints against Claimant Glass about sleeping on the job.  However, Plaintiffs will present evidence to show that these complaints were fabricated in an attempt to permit Defendants to escape liability.  This fact, together with the timing of the adverse actions and evidence of admissions made by Defendants will clearly demonstrate Defendants' reasons to be a pretext for unlawful retaliation.  See, for example, St. Mary's Honor Center, et al. v. Hicks, 113 S.Ct. 2742, 2749 (1993), wherein the Supreme Court stated that the "fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination....no additional proof of discrimination is required." Id.  See also, Howard

13

v. BP Oil Co., Inc., 32 F.3d 520, 525 (11th Cir. 1994), wherein the Court reiterated that "[e]vidence already introduced to establish the prima facie case may be considered, and `indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation and establish pretext."

**IV.    MEASURE OF DAMAGES**

> **A.    Karen Stewart and Kimeny Billington are Entitled to Back Pay Because of Defendants' Acts of Retaliation and/or Sexual Harassment**

Plaintiffs are seeking back pay on behalf of Ellen Glass and Kimeny Billington equaling the difference between the value of the wages each would have earned if each had continued to be employed by Defendants, less amounts earned afterwards by way of mitigation,  plus interest. See Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1446 (11th Cir. 1985) (, rehearing denied, 765 F.2d 154 (11th Cir. 1985), cert. denied, 474 U.S. 1005 (1985).  Prejudgment interest on the back pay amount is assessed at the IRS prime rate, compounded quarterly for the period of back pay liability.  EEOC v. Guardian Pools, Inc., 828 F.2d 1507 (11th Cir. 1987). The purpose of a back pay award is to put the employee in the same financial position he would have been in but for the discrimination, i.e., to make whole or compensate the employee for lost salary and benefits.  See, e.g., U.S. EEOC v. Massey Yardley Chrysler Plymouth Inc., 117 F.3d 1244, 1251 (11th Cir. 1997)(ADEA); Albermarle Paper Co. v. Moody, 422 U.S. 405, 419 (1975); EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 529 (11th Cir. 1990); Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1561 (11th Cir. 1988); Darnell v. City of Jasper, Ala., 730 F.2d 653, 655-57 (11th Cir. 1984).  Collateral benefits, such as unemployment compensation, may not be deducted from back pay awards. Brown v. A.J. Gerrard Manufacturing Co.,

14

715 F.2d 1549 (11th Cir. 1983) (en banc).

Once a finding of unlawful discrimination is found, the victim of discrimination is entitled to full back pay. This Circuit has held that "[v]ictorious Title VII plaintiffs are presumptively entitled to back pay." Nord v. U.S. Steel Corp., 758 F.2d 1462, 1472 (11th Cir. 1985)(where a former employee brought suit claiming her employer discriminated against her on the basis of her sex by failing to promote her and by discharging her after she requested the promotion).

The parties have stipulated to the amount of back pay Ellen Glass and Kimeny Billington would be entitled to receive should Plaintiffs be successful in this suit, thus relieving the jury of this task.

**B.**     **Claimants Kimeny Billington, Ellen Glass, Karen Stewart and Lydia Hall are Entitled to Non-Pecuniary Compensatory Damages**

The Civil Rights Act of 1991 provides for an award of compensatory damages, including non-pecuniary damages.  42 U.S.C. §1981(a).  An award for emotional harm is warranted where there is a sufficient causal connection between the respondent's illegal actions and the complaining party's injury. See Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977).  Evidence of emotional harm may be established by testimony.  Gunby v. Pennsylvania Electric Company, 840 F.2d 1108, 1121-22 (3rd Cir. 1988), cert. denied, 492 U.S. 905 (1989); and Cowan v. Prudential Insurance Co., 852 F.2d 688, 690-91 (2nd Cir. 1988).  The "plaintiff's own testimony may be solely sufficient to establish humiliation or mental distress." Williams v. Transworld Airlines, Inc., 660 F.2d 1267, 1273 (8th Cir. 1981).

In this case, all four (4) claimants will testify to the emotional damages they suffered as a result of Defendants' unlawful conduct, including humiliation, embarrassment, intimidation and inconvenience.

C.     **The Claimants are Entitled to Punitive Damages**

The Civil Rights Act of 1991 also allows for an award of punitive damages where "the complaining party demonstrates that a respondent engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. 1981 (a).

The Eleventh Circuit has defined recklessness, for 1981a purposes, as "'with serious disregard for the consequences of [one's] actions'" and malice as "an intent to harm.'"  Reynolds v. CSX Transp., Inc., 115 F.3d 860, 869 (11th Cir. 1997), *citing*, Splunge v. Shoney's, Inc., 97 F.3d 488, 491 (11th Cir. 1996);  See also, Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir. 1987) (oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for the civil rights of the plaintiff").

The elements to consider when asserting a punitive damages claim include:

a)   the degree, nature and egregiousness of the Defendant's conduct;
b)   nature, extent, and severity of the harm to the claimant;
c)   the duration of the alleged discriminatory conduct;
d)   the existence and frequency of past discriminatory conduct;
e)   the actions of the defendant after being informed of the discriminatory conduct;
f)   evidence of a concealment or "coverup" by defendant; and/or
g)   proof of threats or deliberate retaliatory conduct of defendant.

EEOC Policy Guidance on Damages Provisions of 1991 Civil Rights Act and Disparate Treatment Cases Approved by Commissioners, July 7, 1992.

Plaintiffs will show that an evaluation of the facts of this case based on these factors clearly demonstrates that Kimeny Billington, Ellen Glass, Karen Stewart, and Lydia Hall are entitled to punitive damages.

One factor to consider when evaluating a punitive damages claim is the egregiousness of the

16

defendant's conduct.[2]  In the instant case, Robert Fannin has admitted that he understood the meaning of sexual harassment, and that sexual harassment was illegal.  Yet, despite his conceded knowledge, Fannin engaged in offensive comments and touching and, ultimately committed the clearly egregious incident of grabbing Karen Stewart's breasts.

Another factor to consider is the existence and frequency of past discriminatory conduct.  Here, Plaintiffs will show that Fannin routinely engaged in sexually inappropriate conduct as evidenced by the complaints and objections of several employees who will testify at trial.   Where Defendant's management was aware of the sexually hostile environment, as evidenced by complaints other employees made against the alleged harasser prior to the plaintiff's complaint, and where Defendant had an indifferent response to the plaintiff's complaint, Defendant can be found to have acted recklessly and with disregard for the plaintiff's federally protected civil rights.  See Knowlton v. Teltrust Phones, Inc., 1999 WL 617662, *8 (10th Cir. 1999).

When evaluating a punitive damages claim, courts have also focused on whether the defendant took any steps to address the harassment present in the workplace.  See, e.g., Nicks v. Missouri, 67 F.3d 699, 703 (8th Cir. 1995) (employer's failure to act in response to known sexual harassment was "the product of their reckless or callous indifference to [the plaintiff's] plight")(§ 1983 case).  As discussed at length herein, Defendants obviously did not take steps to address the harassment in the workplace,

---

[2]  Notably, in Kolstad, the U.S. Supreme Court held that "[W]hile egregious conduct is evidence of the requisite mental state, §1981 does not limit plaintiffs to this form of evidence, and the section does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind." Kolstad v. American Dental Association, 119 S.Ct. 2118, 2124(1999). However, in this case, plaintiff can point to egregious and outrageous discrimination in support of its claim for punitive damages.

in as much as the evidence at trial will show that Defendant ASE's Owner created the sexually hostile work environment.

A "'lack of remorse and likelihood of future violations'" is further evidence which may support a finding that defendant acted with malice or reckless disregard of the claimants' rights. Hennessy v. Penril Datacomm Networks, 864 F.Supp. 759, 763 (N.D. Ill. 1994), *aff'd in part, vacated in part on other grounds*, 69 F.3d 1344 (7th Cir. 1995)(*citing* EEOC v. AIC Security Investigations, Ltd., 823 F.Supp. 571, 578 (N.D. Ill. 1993). Defendants' lack of remorse is demonstrated by its equivocating position of denying the occurrence of sexual misconduct and punishing those (i.e., Ellen Glass) who objected to Defendants' inadequate response to such misconduct. Additionally, the evidence demonstrated that Defendants engendered a position of willful blindness with respect to sexual harassment complaints. Brunhilda Fannin (Owner Fannin's wife, Defendant ASE's Owner Fannin at the relevant time, and ASE's only other corporate officer) laughed at, and berated Ellen Glass, when Claimant Glass informed her that Owner Fannin was retaliating against her because she wouldn't sleep with him. Also, Defendants fired Claimant Glass soon after she complained to Mrs. Fannin, objected to Owner Fannin's sexually offensive behavior, and had filed a sexual harassment complaint with the EEOC.

Evidence of a concealment or "coverup" is another element to review in determining the appropriateness of awarding punitive damages. Here, the evidence discloses that Defendant's response to sexual harassment complaints is to conceal the existence of such complaints by fabricating evidence. For instance, Karen Stewart will testify that she was ordered by Owner Fannin to fabricate disciplinary reports falsely charging Miss Glass of sleeping on the job. Owner Fannin then terminated Claimant

18

Glass' employment.

Finally, proof of threats or deliberate retaliatory conduct of defendant provides foundation for an award of punitive damages. As described in detail above, Defendant in this case engaged in retaliatory conduct against Claimant Glass.

## V.     PLAINTIFF EEOC IS ENTITLED TO AFFIRMATIVE RELIEF

"The EEOC represents the public interest when litigating claims, and, through injunctive relief, seeks to protect not only the rights of the individual claimant, but those of similarly-situated employees by deterring the employer from future discrimination." U.S. EEOC v. Massey Yardley Chrysler Plymouth, 117 F.3d 1244, 1253 (11th Cir. 1997)(citation omitted) (District Court's failure to award injunctive relief in an ADEA case was held to be an abuse of discretion). Unless there is "clear and convincing proof of no reasonable probability of further noncompliance with the law[,] a grant of injunctive relief is mandatory." James v. Stockham Valves & Fittings Co., 559 F.2d 310, 354 (5th Cir. 1977), cert. denied, 434 U.S. 1034 (1978), citing, EEOC v. Rogers Bros., 470 F.2d 965 (5th Cir. 1972). This Court should enjoin the Defendants from discriminating against persons on the basis of their sex. Additionally,  a three (3) year injunction is requested mandating that Defendants not discriminate on the basis of sex.   This Court should also require Defendants to adopt, implement and post a non-discrimination policy in a conspicuous location in its facilities along with a notice which educates its employees about the EEOC. In addition, the EEOC should be allowed to monitor its workplace for three (3) years to ensure that female employees are treated the same as other employees. Plaintiff EEOC also requests that the Court grant it costs.

Respectfully Submitted,

19

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DELNER FRANKLIN-THOMAS
Regional Attorney

/s/ Cheryl A. Cooper
CHERYL A. COOPER
Trial Attorney
Florida Bar No. 0171591
U.S.  EQUAL  EMPLOYMENT  OPPORTUNITY
COMMISSION, Miami District Office
One Biscayne Tower, Suite 2700
Two Biscayne Boulevard
Miami, Florida 33131
Tel. (305) 530-6009 Direct
Tel. (305) 536-6001 Main
Fax (305) 536-4494
E-mail: Cheryl.Cooper@eeoc.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 30, 2006, I electronically filed the foregoing

PLAINTIFFS' TRIAL BRIEF with the Clerk of the Court by using the CM/ECF System which will

send a notice of electronic filing to the following: *Andrea L. Reino, Esq.*, Counsel for Plaintiff-

Intervenors, Law Offices of Richard E. Johnson, 314 West Jefferson Street, Tallahassee, FL 32301;

and *William R. Waters, Jr.*, *Esq.,* Counsel for Defendants, Pearson & Waters, P.A., 703 North

Monroe Street, Tallahassee, FL 32303.

/s/ Cheryl A. Cooper
CHERYL A. COOPER
Senior Trial Attorney

20